I'm in St. Paul and I wish the court to recognize the presence of my client, Mr. Troy K. Scheffler, who is sitting to the southwest of me at council table. This court must reverse and remand the decision of the district court disposing of Mr. Scheffler's case under Rule 12b-6. Mr. Scheffler states a claim that Minnesota Statute 171.09 Subdivision 1E-F and Minnesota Rule 7503.1700 Vintage 2010 violates the Americans with Disabilities Act as amended facially and as applied to Mr. Scheffler. The state has made efforts to bring the court's attention to the new statute and the new rule. It is improper to address the new statute because the underlying offense took place under the old statute's regime. To consider the new statute is irrelevant, it's distracting, and it is misleading. Under the B-card violation regime prior to 2011, one who was on a B-card, who drank anytime, would lose his license or her license for six years just for drinking. If somebody had even a homeopathic amount of alcohol in her system while driving, the consequence was a gross misdemeanor and the confiscation of the motor vehicle. To give the court some background of the history that brings us here, Mr. Scheffler, as a youth between the ages of 18 and 21, was found guilty of three driving while intoxicated offenses in 94, 95, and 97. The result was the issuance of this B-card. In 1999, the last B-card violation of Mr. Scheffler took place in which he was a passenger. And the law enforcement officer stopped the vehicle and required Mr. Scheffler to submit to a test, found that he had alcohol in his system, and found him in violation of the B-card. Mr. Scheffler signed an agreement that the State Department of Public Safety imposed upon him effective 2002. They appear at appendix pages 22 through 24. He, in this record, requires him to undergo chemical dependency treatment. The record treats him as an individual with chemical dependency. And the state is requiring him to go through chemical dependency treatment that is abstinence-based, that the state approves in content. Your allegation is that the state regards him as having a disability? Is that the argument? There are two- Because the district court, of course, said you didn't allege adequately that he was disabled or that he was regarded as disabled. So if you could specify what it is you think has been properly alleged, that would be helpful. Yes, Your Honor. Mr. Scheffler has properly alleged that he has a record of chemical dependency. He also properly alleges that the state- What does that mean? The record of- He has alleged that he is disabled, and if so, what's the disability that he alleged? The disability is chemical dependency, dependency specifically upon alcohol. He satisfies the record of disability element under the Americans with Disabilities Act. Where is that alleged? That would be alleged in his complaint, and that would be the exhibits number one and number two, and the references to them appear in paragraphs 14 through 19 of his verified complaint. What he says there is that he was convicted of drunk driving. But a paragraph- Indeed, Judge- The district court says, well, not everybody who's convicted of drunk driving is an alcoholic, so you've got to allege more. He has alleged that paragraphs 15 to 19, the facts that indicate the record of chemical dependency, exhibit number one and exhibit number two are the specific records to which he refers. Tell me this, is he able to drive now? Is there any arrangement that he can drive a car when he's sober now? He may not drive right now. If I may follow up on your question, Judge Bright, under the old regime for being found to have even a minuscule amount of alcohol in one's system, one loses the B-card for six years, whether she drives or whether she just walked out of Mass and having taken Holy Communion, or whether she just had an ice cream sundae that had alcohol-infused vanilla. Was it really true that going to Mass would trigger a violation? Do you have any authority for that or any precedent for that? We don't have any cases. However, the plain words of the statute say any alcohol, there is no exception for religious purposes. We make a great argument on the face of the complaint and the briefs as to the application of the technical assistance manual pertaining to Title II of the Americans with Disabilities Act. And 28 CFR section 35.01 explicitly states that public safety regulations must satisfy the Americans with Disabilities Act. What accommodation are you seeking? You don't dispute that the state is allowed to have some kind of restrictions on a serial drunk driver, correct? Do you agree that the state may certainly impose consequences on an individual who drives while drunk, number one. Number two, the court should have an appreciation of the history. Prior to the first decade of the 21st century in Minnesota, drunk driving offenses were all misdemeanors. The B-card regime is a relic from the day when a drunk driving offense was only a misdemeanor and the legislature had seen fit to impose a greater consequence. However, the B-card regime is a function of misplaced fears, myths, and stereotypes that the United States government's National Institute of Health have disproved. And we argue that the CFR- The whole B-card thing is invalid under the ADA. You're not just saying there have to be reasonable exceptions for attending mass and that sort of thing. You're saying that they can't have an abstinence requirement at all? The abstinence requirement is incompatible with the ADA as amended. The court must consider the statute as it existed in 2010, not the current statute, which has the three-year provision for an ignition interlock. And then followed by seven years of- Where you can't- you get in a car, if you're going to drive it, you've got to blow into something or there's any detection of alcohol, the car won't move. That is exactly how an ignition interlock would work, Judge. Is that what's applied now? That is the subsequent statute that is not the regime that applies to Mr. Scheffler because the underlying offense took place under the old statute. And as we sit here before the court in 2014, he would get his B-card back in 2016, with six years from the alleged underlying offense, but he'd be on an ignition interlock for three years. So that's not really an accommodation, and it's still improper to try to mix the new statute with the old statute. It's a case where the state is trying to have its cake and eat it too. Are you saying that because the state imposes penalties on serial drunk driving, that that makes an individual who suffers those penalties disabled or to be considered disabled under the Americans with Disabilities Act? I hadn't heard that an alcoholic is disabled under the Americans with Disabilities Act unless his alcoholism is such that he's drunk all the time and can't function. Your man functions in society. Otherwise, he's got a job, he works, he's got a family, right? No, Your Honor. He's disabled by reason of a panic anxiety disorder. He's collecting SSDI. We're not making the argument that you're making, Your Honor. He's saying the alcoholism isn't disabling. The alcohol is a disability according to Technical Assistance Manual Section 2, Roman 2-2.5000, and the Eighth Circuit's Minors Against Cargo case in 1997 found alcoholism to be a disability. I'm trying to reserve as much of my time as I can, Judge. Let me just get one question before you reserve your time. Whether you're alleging that he's disabled because of alcoholism or that the state perceives him to be disabled, do the statutes involved here that set up this regime for these penalties and for these restrictions, do they say anything about alcoholism? Or are they keyed or tied to the number of DUI convictions? Your Honor, we're attacking the abstinence requirement and finding that the abstinence requirement is incompatible with what the NIH is finding, that, A, 90% of people within four years are going to have a relapse, so the statute is punishing people for an element or manifestation of alcoholism. And abuse is not dependency, as the NIH found in 2009, and we cited at paragraph 49 of the complaint. The new laws that increase the penalties for subsequent alcohol-driving offenses we don't dispute. They do increase the severity for subsequent offenses, but that wasn't the case when the BCARD regime came into existence. I'd like to reserve the rest of my time, which is about three minutes, Your Honor. You may. Ms. Behrens, we'll hear from you. Thank you. May it please the Court, I'm Angela Behrens on behalf of the appellees, Commissioner Ramona Doman and the State of Minnesota. The Court should affirm the dismissal of Mr. Scheffler's complaint because he failed to allege facts that could establish the ADA applied. Be sure to speak right into that so we can all hear. Thank you. Mr. Scheffler failed to allege facts that stated a claim that the ADA even applies, or that the appellees violated the ADA. It's clear from Mr. Scheffler's complaint that his driving conduct has led to consequences for his driving privileges, but he failed to allege that those consequences have been based on any protected status. The threshold issue for whether the ADA applies is the plaintiff has to prove a present, past, or perceived disability. Mr. Scheffler claims he has a record of a disability or he's regarded as disabled, but he failed to allege facts that could support either conclusion. What about regarded as disabled, given that the state requires him to undergo chemical dependency treatment? Isn't that a suggestion that the state regards him as chemically dependent? And why isn't that sufficient in your view? Well, it's a bit of a misleading right of hearing. He's not necessarily, as a matter of law, required to do treatment. What he's required to do is participate in an assessment and follow what's recommended in the assessment. And, in fact, the rules contemplate that there may be cases where someone doesn't have to complete treatment under the rehabilitation alternative he has in subpart 2A. It talks about variances to the treatment requirements, and under the ignition interlock program subpart 2D also contemplates that there could be situations where the assessment doesn't recommend further treatment. But, essentially, the state's responding to his comment that ADA only prohibits discrimination on the basis or because of a disability. Here, the state is responding to his conduct. Mr. Scheffler? ADA disability, doesn't it have to last 12 months? Well, for an impairment under the regarded as prong, under the amended, it has to last longer than six months. And that's an additional reason the regarded as provision doesn't apply, because there's no allegation that any impairment caused by consuming alcohol lasts more than six months. He doesn't even allege he's had a single drink, other than the four impaired driving incidents. There's no evidence the state is treating him as impaired within the meaning of the ADA. Well, when the state has a condition of what a driver's done, says you shall go to dependency treatment, in-house dependency treatment, where you're there, isn't that a period of disability under ADA? He doesn't allege that he's necessarily had to do treatment. Again, there are exceptions. What he has to do is complete a chemical use assessment and follow what's recommended. So it's going to vary by person on what's actually recommended. And, again, there's no impairment that's lasting more than six months. The state's responding to his conduct. State law defines what driving while impaired is in Section 169A.20, and the impairment in that context is defined with respect to conduct. So the mere existence of a DWI on someone's record is not evidence of a disability within the meaning of the ADA. And in the appendix to Title I of the ADA, the Department of Justice expanded on what an impairment is, and it clarified that an impairment within the ADA is not meant to encompass just bad decisions or bad judgments. And that's essentially what we have here, is he's had four impaired driving incidents. He's regarded as someone who has abused his driving privileges and now needs to earn them back. And that the state's imposed consequences for that conduct is not evidence of discrimination under the ADA. He's not being singled out. He has the exact same opportunity as everyone else to regain his driving privileges and eventually potentially an unrestricted driver's license. And for the same reason the record of allegation fails, because in addition to not having an impairment, there's no allegation of any substantial limitation on a major life activity. His record is four impaired driving incidents over the course of about 16 years. There's nothing to indicate the state's treated him differently because of his status. Even if the ADA applies, the district court correctly concluded that his claims still fail. And Mr. Scheffler asserts that the new statutes and rules shouldn't be looked at, but they should because they apply to him under chapter 7503.1650. Even though his offense predated the change, he has the option right now. He has an opportunity to regain his driving privileges. He can either participate in the ignition interlock program or follow the rehabilitation requirements under the former regime. He's never permanently excluded. He doesn't have to be subjected to the B card regime? He has an option? Can you explain that? First, B card is a relic. That's not a phrase you'll see in any rules or statutes that refer to a restriction used to be on a separate card. But there are still abstinence requirements. Under the ignition interlock program, he would have the interlock ignition for three years. After that, he would still have a restricted license where there would be a use restriction. And then after 10 years total abstinence, he could reapply for an unrestricted driver's license. So after the three years of interlock, he has seven more years of abstinence that's required? Correct. And what do you say to his hypothetical, or I don't know if they're hypothetical or not, his allegations that if he were to take Holy Communion or you heard the other examples, that he would be subjected to these sanctions. Is that true? Is that how the state would apply the- The department's position is it is a total abstinence. The agreement he signs to get back his driver's license would prohibit any consumption of a product containing alcohol. As to potential religious claims, that's obviously not part of this lawsuit. Well, it is part of it. Oh, you mean he hasn't alleged to- Correct. Right. And there is- Well, but the state's allowed to make sensible accommodations, I assume. He's not the only Roman Catholic who's been subject to this regime. You're saying the state does tell people they're forbidden to go to Holy Communion while they're on this program? Well, he can still certainly go to Mass and there may be alternatives, grape juice or something, to work out as well. And I would like to highlight there is a process for judicial review under Section 171.19. So if someone believes the commissioner has arbitrarily or improperly reacted, responded to the driver's license restrictions or taken some action to short their license, there is a process for judicial review to raise those claims. I didn't understand what you said. You said he can qualify now for the interlock claim, which would be three years. Correct. And how about the next seven years? The ignition interlock, he would physically have that device on his car for three years. And then after that, he would just have a restricted license. So he still cannot use alcohol, but he wouldn't have the device on his vehicle. He could use the car under a restricted license. Correct. What restriction? The only restriction is alcohol use, abstinence use. Oh, he could use it to go to work for pleasure, but he couldn't use it if he had any alcohol at all. Correct. What if he did? Then he loses. Then he's back to square one. He could immediately re-enroll in the ignition interlock program. If he violates the use restriction while driving, then that is a new offense. Otherwise, there may be consequences for his license, but it's only a crime if he violates while he's driving. That's the background for new statutes. Really not, I mean, the background we need. But really, that's not the issue, actually. The issue is whether he's considered disabled or is, in fact, disabled under the ADA. Correct. I see it. Correct. And the district court correctly concluded that he did not allege facts that could establish the ADA even applies. But you're saying even if he did allege that, that this is a reason, this public safety restriction is permitted by the ADA, even for an alcoholic? Correct. Correct. And I would like to highlight one other issue. Mr. Scheffler focuses quite a bit on his other legal problems because of his most recent offense. And it's on page two of the respondent's addendum. His alcohol concentration for the fourth offense, it was a .18. This wasn't a violation that occurred because of communion wine or eating a hot fudge sundae. He independently committed a new DWI offense. Regardless of any use restriction, his conduct was a crime. And he had a separate charge because he violated the use restrictions while driving. But again, the only reason he got his driving privileges back at all in 2002 was because he agreed to that condition. He knew the terms, and he violated it. And similarly, he refers to an alleged failure to enact rules quickly enough, asserting he should have had an unrestricted license back in 2010. The argument's both legally irrelevant to an ADA claim, and it's factually incorrect. That legislation that added Subdivision 3 to Section 171.09 did not become effective until July 1, 2011. And his last offense was in December 2010. So that statute never applied to him. What's Subdivision 3 now? That's the one that says you can regain an unrestricted license after 10 years of abstinence. And he had claimed in his brief that the commissioner just didn't enact rules quickly enough. Otherwise, he would have had his license back. And even if he had, he would have lost it again by December and would be in the exact same position today. Do I understand that one contention that you're making in this case is that under the ADA, public entities under some circumstances are not required to make accommodation? Right. That's under the regarded as prong, because if the person's not actually disabled, there wouldn't need to be any accommodation made or altered, any changes to the program. Only if he were an alcoholic would there be a potential accommodation requirement? Is that your point? Under the record of provision. Because if someone's argument is they're not actually disabled under regarded as, there's nothing that theoretically needs to be accommodated. But there's nothing under the ADA, even as amended, that requires the state to reward a fourth DWI with an unrestricted driver's license. And that's essentially what he's seeking here. And because neither the law or the alleged facts can support that conclusion, the district court appropriately dismissed. Unless there are any further questions, I'd ask the court to affirm. All right. Thank you, Ms. Behrens. Appreciate your argument. All right. Mr. Nikitas, you have two minutes, 55 seconds. We'll hear rebuttal. Thank you, Your Honor. Number one, as to conduct. The issue is conduct. Under the BCARD regime, no consumption of alcohol is allowed. That is not conduct accountability. That is mistreatment of someone on account of their status as one with a record of chemical dependency. Conduct consequences are the DWI charges. And with respect to the DWI charge, the state brings up the fourth alleged offense, which is on appeal right now. The connected BCARD violation was dismissed. Under the DWI charge, of which my friend makes reference, Mr. Scheffler's license would be revoked for 90 days only for driving drunk conduct. This is not- You're saying the only sanction the state or the only restriction they can impose for somebody who's got four drunk drivings is the 90 days? They can't have a longer restriction while he's out of custody, but restricted in his driving? Not at all, Your Honor. What we're saying is that when someone is charged with a DWI offense, they lose their license for 90 days, and then the prosecution ensues. The other point where the state is failing is that the state, in imposing the BCARD and abstinence violation regime, is failing to make the individualized assessment that the technical assistance manual for the ADA requires. And the TAM says if the state is not going to do the individualized assessment to ensure that its public safety regulations comply with the ADA, then they have to rely on U.S. government authorities like the Public Health Service, the CDC, or the National Institute of Health. And the bases for the abstinence provisions of the BCARD regime are incompatible with what the National Institute of Health found in 1989, 1999, and 2009 and 2006, as we have cited here. Mr. Scheffler is stating a claim for having a record of chemical dependency that the state imposed upon him in Appendix 22 and 24, which are Exhibits 1 and 2 of his verified complaint. What year are we talking about? What period of time? The alleged offense was 2010, Your Honor. 2010, okay. Is there anything in case law, law review articles, or anything that supports your position? Yes, Your Honor. Robinson against California was 1962, where the Supreme Court struck down a California statute that criminalized the status of being a drunk or an alcoholic. Powell against Texas was... That's in your... Yeah, in the reply brief, Your Honor. The reply brief? Yeah, if I can answer your question, even though my time has expired, I'll answer it. So briefly. Yes. And the court should distinguish that from a later case, Powell against Texas, which is also in the brief, because that addressed public drunkenness. And it was a four-member plurality, and Justice White wrote the fifth vote opinion. And the B card, abstinence regime, runs afoul of both Robinson and Powell and the ADA. The court should reverse and remand and find that he states a claim for having a record of chemical dependency and being perceived by the state as chemically dependent. Thank you, Your Honor. Thank you very much. We appreciate argument from both sides. The case is submitted, and the court will file an opinion in due course.